I'm going to ask you to pronounce your name because otherwise I'll mess it up. Miranda Draglia. Draglia? Draglia. Good. Welcome. May I proceed? Please. Honorable judges, may it please the court, my name is Miranda Draglia and I represent the petitioner Hortencia Ruiz-Perez. This case is about three intersecting issues. It's about a woman, Ms. Hortencia Ruiz-Perez, who is the victim of domestic violence and abuse. It's about congressional intent in protecting victims of domestic violence. And it's about the discretionary authority of the attorney general in allowing victims of domestic violence to apply for certain forms of immigration relief, specifically in this case, VAWA cancellation or removal. That's the relief that Ms. Ruiz-Perez sought in front of the immigration judge and continues to seek today. The question before this court is whether Ms. Ruiz-Perez is actually eligible to apply for VAWA cancellation or removal, given that she had a prior order of removal and that prior order of removal was reinstated. Now, before I get into that question specifically, I do want to note that I'm not going to go into very many details about Ms. Ruiz-Perez's actual application for VAWA cancellation or removal or the abuse and violence that she and her children suffered at the hands of her husband. The petitioner addressed these issues in the petitioner's opening brief to the court. However, the government did not address or respond to those issues. So as far as the petitioner is concerned, there's not really any question about whether Ms. Ruiz-Perez would be granted VAWA cancellation or removal. If she's eligible to apply in the first place, then she would be granted VAWA cancellation or removal because she meets all of those requirements for it. And the government appears to have conceded that point. I mean, that issue is not really before us. Exactly. Well, the government will confirm whether it concedes that or not, but I doubt that the issue is before us. But your point is taken. There's argument not joined on that issue. So, of course, I'll be focusing on the question of whether Ms. Ruiz-Perez can actually apply for VAWA cancellation or removal. And really the question is whether the immigration judge can give her permission to apply. The petitioner, of course, is arguing that, yes, the immigration judge can give her permission to apply, and this is why. The Violence Against Women Act explicitly gives the immigration judge the discretion to consider VAWA applications after an order of removal. And that's in Section 813B of Title VIII. That section specifically says, Discretion to consent to an alien's reapplication for admission. In general, the Secretary of Homeland Security, the Attorney General, and the Secretary of State shall continue to have discretion to consent to an alien's reapplication for admission after a previous order of removal, deportation, or exclusion. And I think it's really important to also mention the second part of that section, which is the sense of Congress. It's the sense of Congress that the officials described in Paragraph 1 should particularly consider exercising this authority in cases under the Violence Against Women Act of 1994. So, in other words, Congress wanted immigration judges and officers to be able to allow women to apply for VAWA cancellation or removal after an order of removal or deportation. While we're talking about the order of removal, can you help me understand our jurisdiction over your petition? So I'm looking at your jurisdictional statement on page 1 of your brief. And it says this appeal is pursuant to Section 242A of the INA, codified at 1252A. So can you help me understand, I'm looking at 1252A, can you help me understand what part of 1252A you think gives our court jurisdiction over your petition? Yes, Your Honor. Essentially, cases that are on review from the Board of Immigration Appeals are, this is a judicial order of removal. So this court has the ability to review those orders of removal. The BIA agreed with the immigration judge to reinstate that order of removal, and so this court has the ability to review that order of removal. Can you help me understand, I'm looking at the text of it. So, this is 1252A1, and it says that we can perform judicial review of a final order of removal. Is there any other text in 1252A that you're relying on? Well, this is a denial of discretionary relief, so that would be what would be reviewable by this court. That's not what A says, so I'm asking you, what's the text in 1252A that gives us jurisdiction over your petition? I thought you were going to tell me it's because you're seeking judicial review of a final order of removal. Am I misunderstanding your position? No, that's correct, Your Honor. It's a judicial review of a final order of removal. Perfect. And when did the Board enter the final order of removal against your client? The Board entered the final order of removal when the decision of the Board was made in this case. I don't have the date off the top of my head. I'm sorry, Your Honor. Oh, that's okay. Why don't we walk through the timeline, and I'll tell you my understanding of it, and then you tell me where I'm going wrong. Because I'm having a hard time figuring it out. So, as I see it, the final order of removal was issued on February 24, 1999. That's the only final order of removal, as far as I can tell. Now, obviously, your client is removed and reenters, and then there's this reinstatement order. So there's a reinstatement order on June 11, 2019, but as you and the government have very fulsomely described in the briefs, all the June 11, 2019 order does is reinstate the old 1999 order. Have I gone astray yet, or are we still on the same page? No, we're on the same page, Your Honor. Okay, great. So, maybe that's two different final orders of removal. Maybe it's one. The way I read the reinstatement provision, all the reinstatement provision is doing is reinstating the old 1999 order. But maybe you think that those are two different final orders of removal. So, let's just, for the sake of discussion, let's just assume that the second one is a final order of removal. Was the petition for review filed within 30 days of the second order? Yes, Your Honor, it was. It was filed within the 30 days after the BIA denied that appeal to the BIA.  Well, when a case is pending in front of the BIA, that order is still open. It's not a final order of removal while the case is pending in front of the BIA. Help me understand that. So, the reinstatement order says, the reinstatement provision says, that the old order is reinstated and not subject to judicial review full stop. So, I'm not sure how you get 30 days from the reinstatement order, but even if you did, you wouldn't get 30 days from the BIA's consideration of whether to withhold or cancel because that doesn't do anything to actually make your client not removable. It might make your client not removable to Mexico, right? But the Supreme Court has been very clear in Nasrallah and Johnson and a whole bunch of recent cases that it doesn't do anything to affect the final order of removal, which at the latest, it strikes me, is June of 2019 and is probably in 1999. Your Honor, that final order of removal was appealed to the BIA. So, while that appeal to the BIA was pending, that order was not final. The reinstatement of the removal order just means that that removal order can be executed, but there was still the possibility of appealing that order to the BIA. And so, while that appeal was pending to the BIA, that order was not final. For that reason, Ms. Ruiz-Perez was detained and remained detained throughout the entirety of the BIA appeal because the BIA appeal stayed her deportation, her removal from the country. If that was not the case, then ICE could have simply removed her from the country if it was a matter of the order is final now and you can go. But that was not the case because that was stayed by the BIA appeal. And so, once the BIA appeal became final, once the BIA ruled that that order was final, then that was when the 30-day period started for us to be able to file a petition for removal. So, in a case like Johnson, where the Supreme Court says, well, it's true that you can seek forms of discretionary relief in front of the board. In that case, I can't remember if Johnson was the Convention Against Torture or if that was Nasrallah, but one was the Convention Against Torture and the other was just withholding. In either case, the alien is still removable, just not removable to the home country where they might be subject to the abuse. Is your position that VAWA relief is different than the relief in Johnson and Nasrallah? Our position is that VAWA relief is discretionary and that the immigration judge has the discretion to decide whether somebody can apply for VAWA cancellation or removal in the immigration court. In other words, an immigration judge can say, no, I'm not going to let you apply for VAWA cancellation or removal and that's that. That would be the end of the case. This case would not exist if that's what the immigration judge had said in our case. However, what the immigration judge said was, I'd probably let you apply except for I'm not an immigration officer. There are these other issues. If the immigration judge had simply said, in my discretion, I'm not going to let you apply, that would have been it. Let me try to ask the question in a different way because it's not a trick. I'm genuinely asking for your position. Under the Convention Against Torture, if a particular petitioner wins that form of relief, they cannot be removed to their home country because, by definition, they would be tortured there. So let's call their home country X. But they can be removed from the United States and sent to a different country. Let's call it Y. Is your position that VAWA cancellation or removal has the same or different effect on the removability of the petitioner? It's a different effect, Your Honor, because it's cancellation or removal. In other words, what the statute actually says is that the removal is canceled and— well, let me put it the correct way. The attorney general may cancel removal of and adjust to the status of an alien who has been lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States. So basically what happens is when cancellation or removal is granted to that alien, they then get to adjust status into the United States. So it's not a matter of they can then be removed to a different country or anything like that. They're now a permanent resident of the United States, which is part of the reason why the government's argument that a cancellation or removal application is not a request for admission is wrong because adjustment of status is an admission into the United States. And we know that. We know that adjustment of status is an admission into the United States because of various cases from the BIA, a matter of Rosas, a matter of E.W. Rodriguez. That one's from 2012, so a little more recent. That one even says this. The board is constrained to treat adjustment as an admission in order to preserve the coherence of the statutory scheme and avoid absurdities. So essentially what the BIA has said is that adjustment of status is an admission because otherwise the result would be absurd. You know, there would be permanent residents that, for example, would not be subject to certain charges of removability because they were never admitted. So that would make no sense. If other types of adjustment of status before immigration judges are admissions, then certainly valid cancellation or removal and an application for valid cancellation or removal has to be a request for admission. And by definition, if this is a request for admission and if adjustment of status is an admission, then an immigration judge has to be an immigration officer that's inspecting and authorizing a person to lawfully enter the United States because that's part of the definition of admission. I'm sorry to interrupt. I think my question, unlike Judge Oldham's question, just goes to the merits of the argument and not to our jurisdiction. Okay. So as I understand, and correct me if I'm wrong, the government's arguing that Section 1231A.5 bars because it says, you know, essentially if there's been a reinstatement of the removal order, quote, the alien is not eligible and may not apply for any relief under this chapter and the alien shall be removed. Now, is the government arguing, I think, that that bars VAWA special cancellation? Is that right? That is the government's argument, yes. So I'd like to hear your response to that specific argument based on that statute. Yes, Your Honor. And the response to that is that there's two responses to that. For example, NICAR applications, the Nicaraguan Adjustment and Central American Relief Act. Somebody who applies for that is not subject to that reinstatement bar. That's an exemption from that section. Correct, yes. And so in the same way the VAWA creates an exemption to the reinstatement bar, it's just a little bit different because this exemption under VAWA is discretionary. How do I know that? I know how the Nicaragua provision you just referred to creates an exception, right? Because it says it does. Correct, correct. So how can I tell that the VAWA is the same as that? Because it says it does. The VAWA says that the Attorney General, specifically the Attorney General in this case because we're talking about immigration court and that's the person that oversees the immigration court, has the authority to, has the discretion to consent to an alien's reapplication for admission after a previous order of removal, deportation, or exclusion. Okay, why should I think that this is a reapplication for admission? Maybe you were addressing that earlier and I just missed it. But why is this a reapplication for admission? Because this is an application for cancellation removal, which when cancellation removal is granted, then that person gets to adjust status. And so because adjustment of status is an admission into the United States, and it's an admission as a lawful permanent resident, then necessarily the application for cancellation removal must be a request for admission. It must be the request to say, hey, cancel my removal and then adjust my status so that I can be a permanent resident of the United States. Okay, so that's your argument that the request here for a special rule cancellation under VAWA is equivalent to an application for readmission? Yes, Your Honor, it is an application for readmission. If it's not, if instead what it is is relief under this chapter, then your client would be barred under 1231A5, right? Well, and here's the other point of that, the other part of that, Your Honor, is that the reinstatement statute appears to be contradictory to the VAWA statute because the VAWA statute is saying that somebody should be permitted to reapply for admission into the United States. Once your client, let's say your client was removed, your client could apply for readmission under the VAWA provision, right? Separately from these proceedings. So if my client is removed, she would not be able to apply for VAWA outside of the country. The requirement for, I guess if you're asking if she could apply to USCIS for VAWA, no, she would not be able to. The person has to be inside this country to be able to apply for VAWA to USCIS. You're saying if she were removed, she could not apply for VAWA? Correct. Yes, that is correct. And what I'd like to also mention is that, you know, if the reinstatement statute is contradictory to the VAWA statute when we look at it, we have to remember to interpret that the interpretation has to be favorable to remedial statutes. In other words, remedial statutes should be construed liberally in favor of their beneficiaries. In this case, construing the statute liberally doesn't mean that reinstatement is overridden or anything like that by VAWA. It just means that VAWA carves out an exception to that statute like many other statutes do. It looks like I've got about 15 seconds left. So if there is any further questions, I'm happy to take them now. Otherwise, I will yield the rest of my time. You have saved time for a bubble. Thank you. All right, Ms. Anton. If I've mispronounced that, you can please correct me. Good morning. May it please the Court. My name is Monica Anton for the Attorney General. I'd first like to clarify on the point of conceding VAWA cancellation eligibility. The IJ did not address that issue, so it would not be appropriate for the Attorney General to do so at this stage. And only if the Court determines that the IJ would have the authority to address it would the Court have to send it back for that. On the issue of VAWA Section 813B and its reference to the regulation at 8 CFR 212.2, that regulation implements an old statutory provision. And the current statutory provision that would govern inadmissibility in the consent to reapply for admission is 212.A.9. So 212.A.9.A went into effect when she was first ordered removed. She would have had to seek consent to reapply for admission from abroad. So what the petitioner's position is is that she's essentially trying to come in from the very last step of the process and bring that to the beginning of the process. And that's contrary to the statute. On the issue of jurisdiction and the final order of removal, the reason the reinstatement decision is a final order of removal, as the Court has previously addressed in the two decisions cited in the Statement of Jurisdiction, that reinstatement is essential to removability. Without it, D just does not have removal authority solely on the basis of the prior order of removal. So this was briefly addressed in the Johnson v. Guzman-Chavez case. On page 2284, the Supreme Court first addresses whether the noncitizens were ordered removed. And it does say that the prior order of removal was the removal order. And then at the end of that paragraph, it says, Accordingly, Respondents, who are the noncitizens, prior orders reinstated under Section 1231A.5 show that the noncitizens were ordered removed. So that reinstatement is essential to the finding of removability. That would give DHS removal authority. So the critical distinction here is that DHS reinstated the prior removal order, which is different from ordering removal anew. That's right. And that's critical to the jurisdictional issue. It's critical to the jurisdiction issue in the sense that the reinstatement is still an order of removal because without it, DHS can't remove the noncitizen. So it's the finding of removability, as that term is used in Section 101A.47, defining an order of deportability. And then finality is a separate issue from whether it's a removal order. And that final order of removal language in Section 1242A.1, finality goes to whether the agency proceedings are complete. And in Guzman-Chavez, the Supreme Court said in a footnote that it was not addressing whether the reinstatement decision is final for the purpose of judicial review in footnote 6. So it did not treat those issues as the same. And in fact, by affirming those decisions, holding that detention was proper under 1231A.1, those courts have precedent saying that the order of removal becomes final after the withholding of the proceedings is complete. Would we be creating a circuit split if we agreed with you after Johnson and Nasrallah? Well, yes, with the Second Circuit. But the Second Circuit had prior precedent that was actually reversed by Johnson versus Guzman-Chavez. So I'm glad you're familiar with the Second Circuit's decision. So Judge Menasche says after Johnson and after Nasrallah, all of the decisions saying that the withholding proceedings make the order non-final and hence non-reviewable and hence not subject to the 30-day mandatory jurisdictional petition bar have been overruled. And so I'm curious if there's any other circuit, or it's just you're asking us to split from the Second Circuit by asserting jurisdiction here. Well, no other circuit has addressed it after Guzman-Chavez yet. This is all pretty recent within, I believe, the Second Circuit's decision was just a couple of months ago. Is the position of the United States government that Judge Menasche is wrong or right? Jurisdictionally, the government's jurisdictional position is in disagreement with the Second Circuit. And in fact, because of the way Guzman-Chavez came out, so the other circuits, I believe it's the Third, the Sixth, and the Ninth, have precedent holding that the remove order becomes final after withholding only proceedings. That's still good law under Guzman-Chavez. So that circuit split is still there. And this court also has precedent holding that, of course, as you know, that the remove order is only final after the withholding only proceeding is complete. So it's the Second Circuit that's the outlier right now. Well, I'm just going to make sure I understand exactly what the position of the United States is. It sounds like it's 1-0 in the current circuit split count, at least post-Johnson, post-Nosralla. Post, yes. And you're asking us to make it 1-1. We're asking the court to maintain its prior jurisdictional position. I appreciate that. Yes. Well, just to put it, if we were to agree with the Second Circuit, we would have to find that the Supreme Court pretty much overruled by implication our prior precedent. Right. And it explicitly said that it was not addressing what constitutes a final order of removal. I've read the Second Circuit's opinion. We haven't received any briefing on that in this case, have we? No. I apologize. I can brief you. Oh, I'm not accusing you of doing anything. I'm just saying we haven't received any briefing on it. Maybe we will. The statement of jurisdiction in the answering brief is the government's position on jurisdiction and remains so after Guzman-Chavez in the Second Circuit. And I would also note that the petitioners in the Second Circuit case have asked for an extension to file a rehearing petition, so it remains to be seen if it's the final word on the Second Circuit's jurisdictional position. Well, if the Court has no further questions, the government rests on the brief. Well, could you – so I was probably ineptly trying to walk through the government's argument with respect to the merits of the case. Sure. I was looking at 1231A5, which I'm sure there's an INA number that I don't know what it is, but A5. And you heard the appellant's response to that argument with respect to the VAWA special rule cancellation. Are they correct, or does the government take a different view? I'm sorry, I didn't hear you. Are they correct, or does the government take a different view? Right. So the government disagrees with that position. 1231A5, as the Court interpreted it in Ramirez-Mejia, is clear that it bars any application or eligibility for relief. And that process set forth in the answering brief of 212A9, beginning with consent to reapply for admission, that has to come first. Once noncitizen reenters without gaining consent to reapply for admission and separately gaining admission, those are two separate processes. They are subject to reinstatement without having gone through both of those steps. So the consent to reapply for admission generally would require a waiting period, but there is an exception that would allow her to seek it sooner. Just look at 212A9. So the government's sort of bottom line on A5 is that when it says the alien is not eligible and may not apply for any relief under this chapter, that means that the VAWA special rule cancellation is not available to the petitioner in this case. Yes, that's correct. Because as in Ramirez-Mejia with asylum, that would override the removal order. So unlike withholding, which is meant to be post-removal, it would completely get rid of the removal order. And it's true that being admitted for permanent residence constitutes an admission, but that's not the type of admission that would help her here because she's coming in at the very end and trying to resolve a number of procedural hurdles with that last step. I see. Thank you. And if the court has no further questions on the government document. All right, thank you, Ms. Antoni. Ms. Draghi, you've saved some time for rebuttal. Mr. Honors, may I proceed? So I think one thing that's important to address here is that Section 813B exists. And it does say that the attorney general shall have discretion to consent to an alien entry application for admission after a previous order of removal, deportation, or exclusion. And the attorney general specifically has discretion over case stat that UIRs over immigration judges. And those immigration judges have authority based on the attorney general's authority. So the question here is this. If the discretion referred to in 813B does not refer to the attorney general's discretion allowing a valid cancellation removal application, then what other applications at the UIR could it possibly be referring to? What other applications for admission could the attorney general have discretion to consent, not to immediately grant, but to consent to having an alien apply for after an order of removal at the UIR? What else is there? There is nothing else. Everything else is either mandatory or it's mandatory that somebody cannot apply. For example, after an order of removal, somebody cannot apply for asylum again. It's only withholding of removal. So those are the mandatory types of applications that the UIR can permit under the attorney general's authority. The only application that this statute could be referring to is valid cancellation rule, which of course makes sense because it's under the VAWA that it's referring to that. And for these reasons, petitioners respectfully request that this court reverse the decision of the BIA and remand the case to the BIA with instructions to remand the case to the immigration judge. Thank you, Ms. Brady. Your case is under submission. Next case for today, Rost v. United States.